```
BRODSKY MICKLOW BULL & WEISS, LLP
Edward M. Bull III, (No. 141996)
Philip E. Weiss, Esq. (No. 152523)
2540 Shelter Island Drive, Suite P
San Diego, California 92106
Telephone: (619) 225-8884
Facsimile: (619) 225-8801

Attorneys for Plaintiff
William Edward Hall
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM EDWARD HALL, an individual, <br><br> Plaintiff, <br><br> v. <br><br> M/Y WHISPER IV, an 87-foot Johnson Motor Yacht, British Registry No. JSAY87030E505, and All of Her Engines, Tackle, Accessories, Equipment, Furnishings and Appurtenances, *in rem*; and AA JOHN, LTD, a Marshall Islands Company, *in personam*; and AA JOHN, LLC, a California Limited Liability Company, *in personam*, and JEFF ARONSON, an individual, *in personam*, <br><br> Defendants. | Case No. 2:21-cv-7485 <br><br> IN ADMIRALTY <br><br> VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, RIGHT TO POSSESSION, AND FOR PARTITION PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE "D", AND FOR BREACH OF CONTRACT <br><br> F.R.C.P. Supplemental Admiralty Rules B(2), D and E |

**COMES NOW** Plaintiff William Edward Hall (the "PLAINTIFF") and alleges:

## JURISDICTION

1.  This is a matter within the admiralty and maritime jurisdiction of this Court pursuant to the provisions of 28 U.S.C. section 1333. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims. In this action the PLAINTIFF seeks, among other relief, a judicial determination pursuant to Supplemental Admiralty Rule D that he is lawfully an owner of the yacht M/Y WHISPER IV (the "Vessel"), that he is entitled

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -1-

to possess and use her, and that he has been and is being unlawfully deprived by the *in personam* Defendants of such use and possession. Supplemental Admiralty Rule D provides as follows:

> "In all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel, in all actions so maintainable with respect to the possession of cargo or other maritime property, and in all actions by one or more part owners against the others to obtain security for the return of the vessel from any voyage undertaken without their consent, or by one or more part owners against the others to obtain possession of the vessel for any voyage on giving security for its safe return, the process shall be by a warrant of arrest of the vessel, cargo, or other property, and by notice in the manner provided by Rule B(2) to the adverse party or parties."

The PLAINTIFF maintains an ownership interest in the DEFENDANT VESSEL, and he seeks in this action an adjudication pursuant to Supplemental Admiralty Rule D as to his right, title and interest in her, and his right access, occupy and possess her. *See also*, Gallagher v. Unenrolled Motor Vessel RIVER QUEEN, 475 F.2d 117 (5th Cir. 1973) ("Admiralty has jurisdiction in a possessory suit by the legal owner of a vessel who has been wrongfully deprived of possession.").

## PARTIES

2. The PLAINTIFF is an individual currently residing England. He is the owner, the seller, and a party holding a right to take possession on breach of a sale agreement, and amendments thereto, of the Vessel, as more fully appearing below.

3. Defendant AA JOHN LLC ("BUYER") is a limited liability company incorporated in the State of California. PLAINTIFF alleges that BUYER breached its obligations to make payments as required by a sale agreement, and has failed to return the Vessel to PLAINTIFF as contractually required, and has deprived PLAINTIFF of the possession, use and enjoyment of the Vessel.

4. Defendant AA JOHN LTD ("ASSIGNEE") is a Marshall Islands company. PLAINTIFF alleges that ASSIGNEE has, as assignee of the sale agreement, breached its obligations to make payments as required by the sale agreement, and has failed to return the

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.

Page -2-

1  Vessel to PLAINTIFF, and has deprived PLAINTIFF of the possession, use and enjoyment of
2  the Vessel.
3       5.    Defendant JEFF ARONSON ("GUARANTOR") is an individual believed to be
4  now, and at all relevant times, residing within Los Angels County, California, aboard the Vessel.
5  GUARANTOR is the Director and sole shareholder of both BUYER and ASSIGNEE.
6  PLAINTIFF alleges that GUARANTOR breached his obligations to make payments as required
7  by the sale agreement, and has failed to return the Vessel to PLAINTIFF, and has deprived
8  PLAINTIFF of the possession, use and enjoyment of the Vessel.
9       6.    The defendant Vessel, WHISPER IV, is an 87 foot Johnson Motor Yacht of
10 British Registry. She believed to be located at Esprit Marina in Marina Del Rey, California, and
11 hence she is within this Honorable Court's admiralty jurisdiction.

### FIRST CAUSE OF ACTION – ACTION FOR PARTITION AND TO ESTABLISH POSSESSORY RIGHTS, TITLE AND INTEREST IN DEFENDANT VESSEL
### (Against All Defendants) Supplemental Admiralty Rules D and E(2)

15      7.    PLAINTIFF refers to Paragraphs 1 through 6, inclusive, of this Verified Complaint
16 and incorporates them as though fully set forth herein.
17      8.    On January 14, 2015, the PLAINTIFF, BUYER and the GUARANTOR entered
18 an agreement for the sale and purchase of the Vessel (the "Agreement"). A copy of the
19 Agreement is attached as Exhibit "A" to this Complaint.
20      9.    Under the terms of the Agreement, the PLAINTIFF sold the Vessel to BUYER for
21 the greater of $1,876,000 or £1,200,000 ("the Purchase Price"). Under clause 2 of the
22 Agreement, the Purchase Price was to be paid in four instalments as follows:
23     (1) An initial $100,000 payable on the signing of the Agreement. This was described by
24 the Agreement as "Part 1" of the "Initial Deposit".
25     (2) $200,000 on the acceptance of the Vessel following a sea trial and condition survey.
26 This was described as "Part 2" of the "Initial Deposit".
27 ///
28 ///

(3) $500,000 by no later than April 30, 2015. This was described as the "Second Deposit"; and

(4) The balance of the Purchase Price, together with any interest or other sums payable, by no later than the of December 31, 2015. For the purposes of the Agreement, December 31, 2015 was defined as the "Long Stop Date".

10. Under clause 3.2 of the Agreement, interest on the unpaid balance of the Purchase Price ran from the date of the Agreement at the rate of 5% above the Bank of England Base Rate from time to time. Under clause 3.3, the interest due under clause 3.2 was payable no later than December 31, 2015 (*i.e.* the Long Stop Date).

11. Under clause 16 of the Agreement, GUARANTOR guaranteed the obligations of BUYER in the following terms:

> "16.1 The Guarantor guarantees to the Seller the due and punctual performance, observance and discharge by the Buyer of all the Guaranteed Obligations if and when they become performable or due under this agreement or (as the case may be) any agreement entered into pursuant to or in connection with it.
>
> 16.2 If the Buyer defaults in the payment when due of any amount that is a Guaranteed Obligation the Guarantor shall, immediately on demand by the Seller, unconditionally pay that amount to the Seller in the manner prescribed by this agreement.
>
> 16.3 The Guarantor as principal obligor and as a separate and independent obligation and liability from his obligations under clause 16.1 and 16.2 hereby agrees to indemnify and keep indemnified the Seller in full and on demand from and against all and any losses, costs, claims, liabilities, damages, demands and expenses suffered or incurred by the Seller arising out of, or in connection with, the Guaranteed Obligations not being recoverable for any reason or any failure of the Buyer to perform or discharge any of its obligations or liabilities in respect of the Guaranteed Obligations.
>
> 16.4 The guarantee in this clause 16 is and shall at all times be a continuing security and shall cover the ultimate balance of all monies payable by the Buyer to the Seller in respect

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -4-

of the Guaranteed Obligations, irrespective of any intermediate payment or discharge in full or in part of the Guaranteed Obligations.

16.5 ...

16.6 The Guarantor waives any right he may have to require the Seller (or any trustee or agent on his behalf) to proceed against or enforce any other right or claim for payment against any person before claiming from the Guarantor under this clause 16.

16.7 The Guarantor shall, on a full indemnity basis, pay to the Seller on demand the amount of all costs and expenses (including legal and out-of-pocket expenses and any value added tax on them) incurred by the Seller in connection with:

(a) the preservation, or exercise and enforcement, of any rights under or in connection with the guarantee in this clause 16 or any attempt so to do; and

(b) ..."

The "Guaranteed Obligations" were defined by clause 1.1 as being:

"... all present and future obligations and liabilities of the Buyer under this agreement and all agreements and obligations entered into pursuant or in connection with it, including all money and liabilities of any nature from time to time due, owing or incurred by the Buyer under this agreement (or any agreement entered into pursuant to or in connection with it)."

12. Under clause 18 of the Agreement, the following was agreed in respect of termination:

"18.1 ...

18.2 The Seller may, on giving written notice to the Buyer, terminate this Agreement if any sum due and payable by the Buyer to the Seller under the provision of this Agreement remains unpaid for more than 30 days.

18.3 The right of the Seller under this clause 18 are without prejudice to any other rights that the Seller might have at law to terminate this Agreement or to accept any breach of this Agreement o the part of the Buyer. Any delay by the Seller in exercising his rights to terminate shall not constitute a waiver of these or any other of his rights."

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -5-

13. The parties' obligations on termination were set out under clause 19, which provided that:

"19.1 On the Termination [defined by clause 1.1 as termination under clause 18] of this Agreement at any time before payment of all sums due under its terms, including for the avoidance of doubt any interest which may be payable, the Buyer shall:

(a) Immediately deliver to the Seller the Vessel in the same condition (fair wear and tear excepted) and outfitted as at the time of Termination;

(b) Pay to the Seller any sums which shall have become due and payable under the provisions of this Agreement as at the date of Termination."

14. The effect of clause 19.1 is that title to the Vessel does not pass from him to the buyer until the Purchase Price and any interest thereon has been paid in full. Alternatively, that if title does pass, the same is conditional and reverts to the PLAINTIFF in the event that the Agreement is terminated under clause 18.

15. Under clause 21, the Agreement is governed by the law of England, with the parties submitting to the non-exclusive jurisdiction of the court of England in relation to any dispute arising out or in connection with the Agreement. Based on this requirement, the PLAINTIFF has filed a separate action on the merits of this case, with the identical allegations as set forth herein, in the Bristol Circuit Commercial Court in England, and is in the process of serving the *in personam* defendants pursuant to the controlling rules of that court, and baring any further agreement of the parties to litigate the merits of this case in this action, PLAINTIFF is prepared to stay this action in favor of the English proceedings once the Vessel has been taken into the custody of this Honorable Court (and the substitute custodian). A copy of the Claim Cover Form with identifying information is attached as Exhibit "B" to this Complaint. The Statement of Particulars and Exhibits thereto, all of which are included in and/or attached to this Complaint, have been omitted from this filing for the sake of brevity, but shall be filed with the Court if so directed.

16. BUYER paid Part 1 of the Initial Deposit (*i.e.* $100,000) on the signing of the Agreement.

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -6-

17. On or around February 2, 2015 the Vessel was subject to a satisfactory sea trial and condition report. Following this, under clause 8 of the Agreement, BUYER was deemed to have accepted the Vessel. The Vessel was subsequently collected by BUYER (acting via GUARANTOR) on or around March 9, 2015.

18. Under clause 2 of the Agreement, Part 2 of the Initial Deposit (*i.e.* $200,000) was due on the acceptance of the Vessel.

19. On February 28, 2015, the PLAINTIFF, BUYER and GUARANTOR entered a deed of variation whereby Part 2 of the Initial Deposit was decreased from £200,000 to $150,000 and the Second Deposit (*i.e.* the sum payable by April 30, 2015) was increased from £500,000 to $550,000 ("the Variation"). A copy of the Deed of Variation is attached as Exhibit "C" to this Complaint.

20. BUYER paid the sum of $150,000 in or around February 2015.

21. On March 20, 2015, the PLAINTIFF, BUYER and GUARANTOR entered a deed of assignment whereby the rights and liabilities of BUYER under the Agreement were assigned to the ASSIGNEE (the Assignment"). A copy of the Assignment is attached as Exhibit "D" to this Complaint.

22. Following the assignment, BUYER, ASSIGNEE and GUARANTOR failed to make the payment of the Second Deposit, and have failed generally to comply with their payment obligations under clause 2 of the Agreement.

23. On December 14, 2015, the PLAINTIFF and GUARANTOR entered an agreement ("the Acknowledgment") whereby, in consideration for the PLAINTIFF not terminating the Agreement and taking enforcement action against the Defendants, GUARANTOR agreed to pay the following sums:

(1) $30,000 by no later than December 31, 2015 ("the December 2015 Payment").
(2) $42,270 by no later than January 15, 2016 ("the January 2016 Payment").
(3) A final payment of $1,626,000 plus any interest by no later than June 30, 2016 ("the Final Payment").

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -7-

(4) Interest at the rate of 5.5% per annum from January 1, 2016 until the actual date of the Final Payment, such interest to be paid by no later than June 30, 2016 (with interest again running on the outstanding balance from the start of the period, rather than from the final date for payment).

A copy of the Acknowledgment is attached at Exhibit "E" to this Complaint.

24. Pursuant to the Acknowledgment GUARANTOR is liable to pay the sums specified as a primary obligor rather than merely as a surety for the ASSIGNEE.

25. Under clause 5.1 of the Acknowledgment, it was agreed that:

"For the purposes of this letter and of all payments made, or to be made, under it, sums stated in US Dollars shall be deemed to convert into Sterling at the rate of US$ 1.5 to £1 and all payments and calculations (including those relating to Interest shall be made accordingly."

26. GUARANTOR made the December 2015 Payment late, paying the same, along with the January 2016 Payment in January 2016. GUARANTOR then failed to pay the Final Payment, only paying the sum of $559,928 in June 2016.

27. As a concession to the Defendants, the PLAINTIFF subsequently entered several variations pushing back the Long Stop Date and the date for payment of the Final Payment under the Acknowledgment. For the sake of brevity, those variations are summarized as follows:

| Agreement Date | Outstanding Balance | Date for the Final Payment |
| --- | --- | --- |
| June 27, 2016 | $1,104,9062 | December 30, 2016 |
| January 2, 2017 | $1,052,621 | July 31, 2017 |
| September 19, 2017 | $1,351,886 | January 31, 2018 |
| February 7, 2018 | $1,282.886.52 | December 31, 2018 |
| January 31, 2020 | $1,259,451.49 | May 1, 2021 |

28. The variations dated June 27, 2016 and January 2, 2017 were entered between the PLAINTIFF and GUARANTOR, reflecting GUARANTOR's status as a principal obligor following the Acknowledgment. The PLAINTIFF and both GUARANTOR and ASSIGNEE were parties to the other variations.

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.

Page -8-

29. Each of the variations specified the amount outstanding by way of principal and interest at the date of each agreement (the figures agreed being those set out at paragraph 26 above).

30. Each of the variations expressly confirmed that for the purposes of payments to be made under them, payments made in dollars were deemed to convert to Sterling at the rate of US$1.5 to £1 (*i.e.* they each re-affirmed clause 5.1 of the Acknowledgment).

31. The variation of June 27, 2016 also increased the rate of interest payable by the Defendants from 5.5% to 6% per annum. A copy of the June 27, 2016 Variation is attached as Exhibit "F" to the Complaint.

32. Notwithstanding the concessions offered by the PLAINTIFF, the Defendants have failed to pay the balance of the Purchase Price plus interest thereon and/or the Final Payment. To date, the only payments made by the Defendants are as follows:

| Date of Payment | Amount |
| --- | --- |
| January 2015 | $100,000 (paid by BUYER, credit given) |
| February 2015 | $150,000 (paid by BUYER, credit given) |
| January 2016 | $30,000 |
| January 2016 | $42,270 |
| June 2016 | $459,928 |
| June 2016 | $100,000 |
| October 2016 | $12,000 |
| August 2016 | $62,000 |
| December 2016 | $12,000 |
| June 2017 | $123,000 |
| July 2017 | $20,000 |
| October 2017 | $50,000 |
| December 2017 | $50,000 |
| June 2018 | $50,000 |
| January 2020 | $150,000 |

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.

Page -9-

| | | |
|---|---|---|
| | Total | $1,411,198 |

33. Where payments have been made by the Defendants, they have been applied first to reducing the interest due under the Agreement/the Acknowledgment and second to reducing the balance of the Purchase Price.

34. As of September 8, 2021, the outstanding balance of the Purchase Price/Final Payment inclusive of interest amounts to $1,383,727.40.

35. ASSIGNEE has failed to make payment in accordance with clause 2 of the Agreement, whether as enacted or as subsequently varied by the parties. The sums due have remained unpaid for more than 30-days meaning that, under clause 18.2 of the Agreement, the PLAINTIFF is entitled to terminate the Agreement forthwith.

36. Within this Complaint, the PLAINTIFF gives notice under clause 18.2 of the Agreement that the same is terminated forthwith. This Notice is also being given in the UK Proceedings, in person to GUARANTOR, and by mail and email pursuant to the terms of the Agreement, as amended.

37. In accordance with clause 19.1 of the Agreement, on termination ASSIGNEE is obliged to provide, and the PLAINTIFF hereby claims:

    (1)    The immediate return of the Vessel.

    (2)    The payment of all sums due under the Agreement, being the sum of $1,383,727.40.

38. The PLAINTIFF therefore claims an order or injunction for the delivery-up of the Vessel and judgment in the sum of $1,383,727.40. The PLAINTIFF hereby gives ASSIGNEE the option of paying the value of the Vessel in the alternative to delivery-up. The PLAINTIFF values the Vessel at: $2,200,000.

### SECOND CAUSE OF ACTION – BREACH OF CONTRACT
### (Against All Defendants)

39. PLAINTIFF refers to Paragraphs 1 through 38, inclusive, of this Verified Complaint and incorporates them as though fully set forth herein.

///

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.

Page -10-

40. A contract existed between PLAINTIFF and Defendants as set forth above herein.

41. The contract required Defendants to pay to PLAINTIFF as set forth above herein.

42. PLAINTIFF has performed all of the obligations required of him pursuant to the contract.

43. Defendants breached the contract as set forth above herein.

44. For so long as the sums due under the Agreement are not paid, the PLAINTIFF claims ongoing interest at the rate of 6% above the Bank of England Base Rate from time to time. Such interest amounts to the sum of $210 per day and continuing.

45. Further or alternatively, the PLAINTIFF claims it is entitled to interest on the sums claimed (including, if applicable, the value of the Vessel) at such rate and for such period as the court thinks fit.

46. In breach of clause 16.1 of the Agreement, GUARANTOR has failed to ensure the due and punctual performance of the Agreement by ASSIGNEE. The PLAINTIFF therefore claims damages to compensate it for GUARANTOR's breach. The PLAINTIFF claims the sum of $1,383,727.40 (being ASSIGNEE's liability under the Agreement) and, in so far as the Vessel is not returned immediately on service of the Complaint, the sum of $2,200,000 (being the value of the Vessel and the quantum of the PLAINTIFF's loss if it is not returned) as damage for breach of contract.

47. Further or alternatively, within and with this Complaint, the PLAINTIFF demands that GUARANTOR pays the amounts owed by ASSIGNEE in accordance with clause 16.2 of the Agreement and/or indemnify it for ASSIGNEE's failure to pay the sums owed by it in accordance with clause 16.3 of the Agreement.

48. In the further alternative, the PLAINTIFF claims payment of the sum of $1,383,727.40 as a primary liability due by GUARANTOR under the Acknowledgment.

49. For so long as the sums due under the Agreement and/or the Acknowledgment are not paid, the PLAINTIFF claims ongoing interest at the rate of 6% above the Bank of England Base Rate from time to time. Such interest amounts to the sum of $210 per day and continuing.

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.

Page -11-

50. Further or alternatively, the PLAINTIFF claims it is entitled to interest on the sums claimed (including, if applicable, the value of the Vessel) at such rate and for such period as the court thinks fit.

51. Finally, the PLAINTIFF claims his costs on a full indemnity basis in accordance with clause 16.3 of the Agreement and/or clause 5.2 of the Acknowledgment.

52. The claim is brought for payment in US$ because: (i) the Purchase Price under the Agreement was agreed in US$; (ii) under the Acknowledgment and each of the subsequent variations, the outstanding balance was expressed in dollars; (iii) all payments made by the Defendants have been made in US$; and (iv) and the outstanding balance has been calculated by the PLAINTIFF in US dollars.

53. Pursuant to clause 5.1 of the Acknowledgment and the terms of each of the subsequent acknowledgments, the parties agreed a US dollar to Sterling conversation rate of US$1.5 to £1. The PLAINTIFF is therefore entitled to, and does, adopt this conversation rate to calculate the Sterling value of the claim. The PLAINTIFF therefore claims the sums of £922,484.93 and ongoing interest at the rate of £140 per day.

54. The PLAINTIFF accepts that the agreement of the US$ to Sterling conversion rate does not apply to the valuation of the Vessel and therefore adopts an exchange rate of US$1.3784 being the composite rate given by Bloomberg.com at the opening of trading on 8 September 2021. If, rather than returning the Vessel the Defendants wish to pay the value of the same, the PLAINTIFF seeks the sum of £1,596,053.40.

55. PLAINTIFF has made every effort to accommodate the Defendants, and in particular GUARANTOR Aronson, and to give him time to discharge his obligations to PLAINTIFF under the Agreement as amended. GUARANTOR has made no payments of any kind since January 2020, and has advised PLAINTIFF's counsel repeatedly that he will make up all payments once he resolves his pending divorce proceedings, where PLAINTIFF is advised (and alleges on information and belief), that GUARANTOR claims that he has no equity in the Vessel. PLAINTIFF has even delayed taking action for the return of the Vessel after GUARANTOR took the Vessel to a mooring in Avalon Harbor at Catalina Island from

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -12-

Memorial Day through Labor day, where PLAINTIFF is advised (and alleges on information and belief), that GUARANTOR spent the summer throwing lavish parties on "his" yacht.

56. PLAINTIFF is advised (and alleges on information and belief), that GUARANTOR has also run the Vessel aground, and run over a mooring assembly in the Avalon Harbor, and PLAINTIFF anticipates that the City of Avalon will likely be filing a claim or right against the Vessel in this action.

57. PLAINTIFF is advised (and alleges on information and belief), that GUARANTOR has been late or in breach of obligations owed to other individuals in respect to the Vessel, and PLAINTIFF fears that the Vessel will become further encumbered, damaged, or lost, if not promptly taken into the custody of this Honorable Court, and held in safety and care of the Court's substitute custodian until the resolution of the claims of the parties, and/or the sale of the Vessel by order of this Court.

## **PRAYER**

**WHEREFORE**, PLAINTIFF prays:

1. That process in due form of law pursuant to this Court's Admiralty and Maritime Jurisdiction issue against the Vessel, her rigging, tackle, apparel, furniture, engines, bunkers, and all other necessaries thereunto appertaining and belonging, and that Defendants AA JOHN LLC, AA JOHN LTD, and JEFF ARONSON, and all persons claiming any interest in the DEFENDANT VESSEL, be cited to appear, interpose their claims, and answer this verified *in rem* Complaint; and

2. That the Court determine the ownership interests of the parties in the Vessel, including PLAINTIFF's interest therein, and that it confirm his entitlement to occupy and possess the Vessel; and

3. That an Order issue requiring all claiming an ownership interest in the Vessel to tender to the Substitute Custodian appointed by the Court all items in their possession belonging or appertaining to the Vessel; and

///

///

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -13-

4. That the Vessel, her rigging tackle, apparel, furniture, engines, bunkers, and all other necessaries thereunto appertaining and belonging be condemned and sold at public auction by the United States Marshal; and

5. That the sale proceeds derived from the United States Marshal auction of the Vessel be distributed in accordance with ownership interests in her, as determined by the Court; and

6. That PLAINTIFF be permitted to credit bid at such auction up to an amount equal to the amount of his claim ($1,383,727.40, plus his costs of suit, interest, and attorney and Substitute Custodian fees); and

7. That it be decreed that any and all persons, firms or corporations claiming any interest in the DEFENDANT VESSEL are forever barred and foreclosed of and from all right or equity of redemption or claim of, in, or to the Vessel and every part thereof; and

8. That all intervening parties pay *custodia legis* expenses in the proportion that the intervenor's claim against or to the DEFENDANT VESSEL bears to the sum of all asserted claims against her; and

9. For judgment against the ASSIGNEE in the sum of $1,383,727.40 (or £922,484.93) plus interest from 8 September 2021 at the rate of $210 (or £140) per day; and

10. For judgment or order for the delivery-up or return of the Vessel, or alternatively, judgment for its value in the sum of $2,200,000 (or £1,596,053.40).

11. For judgment against the GUARANTOR in the sum of $1,383,727.40 (or £922,484.93) plus interest from 8 September 2021 at the rate of $210 (or £140) per day.

12. In so far as the same is not returned, judgment for the value of the Vessel in the sum of $2,200,000 (or £1,596,053.40).

13. That PLAINTIFF be awarded pre and post judgement interest, his costs of suit, including *custodia legis* expenses; and

14. That the Court award payment of PLAINTIFF'S reasonable attorneys' fees and costs as allowed by the Agreement; and

///

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -14-

15. That PLAINTIFF have such other and further relief as the Court in justice and equity might determine he is entitled to receive.

Respectfully submitted,

Dated: September 17, 2021

BRODSKY MICKLOW BULL & WEISS, LLP

By: /s/ Edward M. Bull III
Edward M. Bull III

Attorneys for Plaintiff
WILLIAM EDWARD HALL
ebull@bmbwlawfirm.com

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page -15-

# VERIFICATION

I, WILLIAM EDWARD HALL, declare under penalty of perjury under the laws of the United States and the State of California as follows:

1. I, the undersigned, am the Plaintiff in this action. I certify I have read the foregoing Verified Complaint and know its contents.

2. The matters stated in the Verified Complaint are true of my own knowledge and belief except as to those matters stated on information and belief, and, as to those matters, I believe them to be true and correct.

Executed this 16th day of September, 2021 at Taunton, Somerset, England.

*William Edward Hall*
William Edward Hall

VERIFIED COMPLAINT FOR VESSEL ARREST, TO ESTABLISH TITLE, INTEREST, AND RIGHT TO POSSESSION, FOR PARTITION AND FOR BREACH OF CONTRACT

Case No.
Page 16